**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| MELINDA WHEAT, *et al.*, | : | |
| | : | |
| *Plaintiffs*, | : | Case No. 1:23-cv-818 |
| | : | |
| v. | : | Judge Jeffery P. Hopkins |
| | : | |
| ONE HOLLAND CORPORATION | : | |
| d/b/a SKYLINE CHILI, | : | |
| | : | |
| *Defendant*. | : | |

---

**OPINION & ORDER**

---

Plaintiff Melinda Wheat ("Plaintiff" or "Melinda") suffered a slip and fall when she entered a Skyline Chili restaurant on a rainy day in March 2022. Melinda and her husband Scott (collectively, "Plaintiffs" or "the Wheats") bring this case against Defendant One Holland Corporation d/b/a Skyline Chili ("Defendant" or "Skyline"), a for-profit corporation that owns and operates the Skyline Chili restaurant where Melinda's accident occurred. Plaintiffs bring this suit against Skyline for negligence and loss of consortium.

Skyline asks the Court to grant summary judgment on both claims. In that same motion, Skyline seeks to exclude one of Plaintiffs' experts, Kevin Rider, PhD. Plaintiffs oppose Skyline's omnibus motion and separately ask the Court to strike a portion of Skyline's reply in support. In its reply, Skyline raises, for the first time, a request to exclude a second expert, Alan Someck. All of these issues are ripe for consideration. For the reasons stated below, the Court **GRANTS** Plaintiffs' motion to strike, **GRANTS** Skyline's motion for summary judgment, and **DENIES** as moot Skyline's motion to exclude Dr. Rider's opinions.

## I.      BACKGROUND

On a rainy day in March 2022, Plaintiff Melinda Wheat arrived at a Skyline Chili restaurant with her husband, Scott, and son, Jacob, to have lunch with members of their extended family following Melinda's mother's funeral. Melinda Dep., Doc. 22, 20:22–21:7; Scott Dep., Doc. 23, 26:16–27:13; Jacob Dep., Doc. 24, 9:15–20, 14:12–18; Melinda Dep., Ex. A.[1] Melinda entered the restaurant first, followed by Scott and Jacob. Melinda Dep., Ex. A. After she began to perambulate through the restaurant towards the table where her extended family was already seated, Melinda slipped and fell. *Id.* Neither her husband, nor her son suffered the same fate, though they walked the same path. *Id.* Melinda suffered serious injuries as a result of her fall and required surgery. At their depositions, Melinda, Scott, and Jacob all testified that they do not know the cause of Melinda's fall. Melinda Dep., Doc. 22, 63:16–22; 63:25–64:2; Scott Dep., Doc. 23, 34:15–17; Jacob Dep., Doc. 24, 11:8–10. Skyline manager, Molly Marx, and employees, Shirley LaVilla and Katherine Withers, who were working that day could not identify the cause either. Molly Dep., Doc. 27, 16:11–18; Shirley Dep., Doc. 26, 14:16–18; Katherine Dep., Doc. 25, 18:2–4. No one else fell at Skyline the day Melinda fell. Molly Dep., Doc. 27, 16:19–20; Shirley Dep., Doc. 26, 14:22–23; Katherine Dep., Doc. 25, 18:5–7.

In the complaint, Plaintiffs assert that Skyline was negligent and that Melinda, a business invitee, suffered serious injury as a result of Skyline's negligence. Compl., Doc. 1, ¶¶ 6–15. There is no dispute this Court has subject matter jurisdiction over this action pursuant

---

[1]   This exhibit is the security footage that captured Melinda's slip and fall. Skyline manually filed the exhibit as Exhibit A to the deposition transcripts of Melinda, Scott, and Jacob, and as Exhibit 2 to the deposition transcripts of witnesses, Katherine Withers and Molly Marx. *See* Doc. 28. For purposes of this opinion, the Court will cite to the footage as: Melinda Dep., Ex. A.

to 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs and Skyline and the amount in controversy exceeds $75,000. *Id.* ¶ 1. *See U.S. Motors v. Gen. Motors Eur.*, 551 F.3d 420, 422 (6th Cir. 2008).

In its omnibus motion, Skyline asks the Court to exclude and strike the opinions of Dr. Rider, and for the Court to grant summary judgment in Skyline's favor. Doc. 33. Plaintiffs filed a response in opposition (Doc. 34), and Skyline filed its reply (Doc. 36). Based on the contents of Skyline's reply, Plaintiffs have separately moved to strike the reply to the extent that Skyline requests exclusion of the expert opinions rendered by Plaintiffs' second expert, Alan Someck. Doc. 37. Skyline did not respond to that motion, and the time for doing so has long since expired. Thus, all of these matters are ripe for the Court's consideration.

## II.     LEGAL STANDARD

### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

3

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

## B. Expert Testimony

Federal Rule of Evidence 702 permits certain witnesses with specialized knowledge to testify as experts at trial:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Because juries tend to place extra weight on expert opinions, courts play an important gatekeeper role when it comes to expert witnesses. *Daubert v. Merrell Dow Pharms., Inc.*, 509

U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The gatekeeper role is two-fold. First, the Court must decide whether the expert's testimony is relevant. *Daubert*, 509 U.S. at 589. Second, the Court must consider whether the expert's testimony is reliable. *Id.* at 589–90. Relevance has received liberal treatment by courts. *Id.* at 587. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Reliability is a "flexible" inquiry. *Kumho*, 526 U.S. at 141–42. "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142.

### III.   LAW AND ANALYSIS

#### A. Motion to Strike

As an initial matter, the Court addresses Plaintiffs' motion to strike Skyline's reply to the extent that Skyline requests new relief: excluding the opinions of a second expert, Alan Someck, in addition to excluding the opinions of Dr. Kevin Rider. In their motion to strike, Plaintiffs contend that Skyline should be prohibited from newly requesting exclusion of Someck's opinions on reply because the request is not only untimely under the scheduling order, but it is prejudicial. Doc. 37, PageID 869. Skyline did not respond to Plaintiffs' motion to strike, and the time for responding to that motion has long since passed.

"[I]t is well established that a moving party may not raise new issues for the first time in its reply brief." *Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007). *See also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). Here, Skyline did not address, nor even mention, the opinions of Someck in its motion. But on reply, Skyline seeks wholesale exclusion of his opinions

alongside those of Dr. Rider. Though one might argue that Skyline addressed Someck's opinions in reply to Plaintiffs' response, a realistic view shows that Skyline broadly expands the scope of relief sought in the motion in a manner that unfairly deprives Plaintiffs of an opportunity to respond. Thus, the Court will grant Plaintiffs' motion and strike Skyline's reply to the extent that Skyline asks to strike and exclude the opinions of expert Alan Someck.

### B. Motion for Summary Judgment

The Court turns next to Skyline's motion for summary judgment. Skyline asserts that it is entitled to summary judgment because Plaintiffs cannot establish that Skyline breached its duty or that Skyline caused Melinda's injuries because Plaintiffs cannot identify what caused Melinda to slip. Doc. 33, PageID 625–29. Plaintiffs counter that there is compelling evidence that Skyline breached the duty of care it owed to Melinda. Doc. 34, PageID 692.

The parties agree that Ohio law governs this diversity action. Doc. 33, PageID 625; Doc. 34, PageID 692. To prevail on a negligence claim under Ohio law, a plaintiff must show (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *May v. Kroger Co.*, 2017-Ohio-7696, ¶ 16 (5th Dist.) (citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St. 3d 75, 77 (1984)). In cases of premises liability, the duty of care owed is, as a general matter, dependent on whether the injured party is an invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St. 3d 312, 315 (1996). There is no dispute that Melinda was a business invitee. Doc. 33, PageID 614; Doc. 34, PageID 692.

To business invitees like Melinda, a premises owner like Skyline owes "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers

6

are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203, 203 (1985) (per curiam). To be clear, however, a premises owner "is not an insurer of a customer's safety or against all types of accidents that may occur on its premises." *May*, 2017-Ohio-7696, ¶ 17 (citing *Pascal*, 18 Ohio St. 3d at 203). In other words, there is no presumption of negligence merely because an accident or injury occurred. *Id.*

When a business invitee pursues a slip-and-fall negligence action against a premises owner, the business invitee must show:

> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
>
> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
>
> 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943).

Against that backdrop, the Court turns to the duty of care owed to Melinda as a business invitee and whether Skyline beached that duty. This requires the Court to consider what caused Melinda's fall. The reason for this is simple: "[t]o establish negligence in a slip and fall case, it is incumbent upon the plaintiff to identify or explain the reason for the fall." *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App. 3d 65, 67–68 (12th Dist. 1989) (citing *Cleveland Athletic Assn. Co. v. Bending*, 129 Ohio St. 152 (1934)). Stated more plainly: "a plaintiff must know what caused [her] to slip and fall . . . [and] cannot speculate as to what caused [it]." *Beck v. Camden Place at Tuttle Crossing*, 2004-Ohio-2989, ¶ 12 (10th Dist.) (citing *Stamper*, 65 Ohio App. 3d at 68). If she cannot identify what caused the fall "either personally or with the use of outside witnesses," she "will be prevented from establishing negligence." *Id.*

Here, Melinda does not elevate to the standard required because she is unable to identify what caused her to fall. Though she asserts in this case that she likely fell as a result of "tracked-in water or contaminants," *see* Doc. 34, PageID 695, she is only able to "speculate" as to the cause:

> Q: Based on what I know now, it's my understanding that you're not sure what caused your fall?
>
> A: Yeah, I don't know what caused me to slip. I mean, I have ideas, but I don't –
>
> Q: But you don't know?
>
> A: No.
>
> . . .
>
> Q: So you're only speculating as to what caused you to fall, correct?
>
> A: Yes.

Melinda Dep., Doc. 22, 63:16–22; 63:25–64:2. More to the point, Melinda testified that she "did not recall" whether she looked at the floor after she had fallen, nor whether she saw anything on the floor before or after she fell. *Id.* at 64:22–24; 65:4–9.

What about the other eyewitnesses? Melinda's husband Scott, and her son, Jacob, followed behind her as they proceeded into the restaurant. Melinda Dep., Ex. A. Neither of them slipped like Melinda or had any issues walking through the area where she fell. Jacob Dep., Doc. 22, 22:2–7; Scott Dep., Doc. 23, 25:14–19. While both of them witnessed Melinda's fall, *see, e.g.*, Jacob Dep., Doc. 24, 10:16–18 ("I was walking behind her and we got to the end of the table that was on the right side and she slipped and she fell."), neither could identify what caused it. Scott confirmed:

> Q: So to be accurate, you had no idea of what caused your wife to slip, correct?

8

> A:      Correct.

Scott Dep., Doc. 23, 34:15–17. Jacob testified to the same:

> Q:      Do you know what caused your mother to fall?
>
> A:      No.

Jacob Dep., Doc. 24, 11:8–10.

None of the employees working at Skyline on that day were able to identify the cause of the fall either. Servers, Shirley LaVilla and Katherine Withers, witnessed Melinda's fall. Shirley testified that no one at the restaurant said anything to her about what caused Melinda to fall. Shirley Dep., Doc. 26, 14:16–18. Shirley also confirmed that Melinda was the only person to fall that day. *Id.* at 14:22–23. Katherine's testimony matched Shirley's. Katherine Dep., Doc. 25, 18:2–7. After witnessing the fall, Shirley alerted her manager, Molly Marx. Molly spoke with Melinda, but Melinda did not say anything to Molly about what caused her to fall—nor did anyone else. Molly Dep., Doc. 27, 16:11–18. Molly confirmed, like Shirley and Katherine, that no one else fell at Skyline on the same day as Melinda. *Id.* at 16:19–20. Of significance here, after the fall, Molly inspected the condition of that area of the floor and found it to be dry. *Id.* at 36:23–38:5. Molly also completed an incident report following Melinda's fall indicating there "was not water on the ground." Molly Dep., Ex. 4, Doc. 27-2.

So based on all the eyewitness accounts, it defies logic for Plaintiffs to now make the jump from not knowing what caused Melinda's fall at the time of the incident to now being able to grasp hold to their new theory that "tracked-in water or contaminants are most likely what caused" it. Doc. 34, PageID 695. Plaintiffs theorize now that wet outdoor conditions were to blame. Melinda testified that it had been "misting" just prior to arriving at Skyline and that there was water on the ground outside when she arrived, presumably to suggest that

9

wet conditions outside made for slippery conditions inside. Melinda Dep., Doc. 22, 20:22–21:25. But this is nothing more than speculation and conjecture. *Beck*, 2004-Ohio-2989, ¶ 12. Based on her own testimony and the testimony of other witnesses, Melinda "[does not] know what caused [her] to slip." Melinda Dep., Doc. 22, 63:16–22. Though it is plausible that the floor may have been wet due to the rainy conditions outside, Melinda does not recall seeing anything on the floor before or after she fell. *Id.* at 64:22–24; 65:4–9. Her husband, Scott, testified similarly. Scott Dep., Doc. 23, 34:10–14. As the court explained in *Beck*, a plaintiff like Melinda does not have to know what type of substance caused her fall, only that the substance is in fact what caused it. *Beck*, 2004-Ohio-2989, ¶ 12 ("[W]hile a plaintiff must identify the cause of the fall, he does not have to know, for example, the oily substance on the ground is motor oil. Instead, it is sufficient that the plaintiff knows the oily substance is what caused his fall."). The testimony Melinda so heavily relies upon to make her case, however, does not help her very much at all because it consists in sum and substance of speculation and supposition.

Beyond this, Plaintiffs attempt to draw the inference that Melinda must have slipped on a wet substance because Scott observed after the fall that the back of Melinda's clothes were wet. Scott Dep., Doc. 23, 22:6–7. Analyzing a slip-and-fall claim, albeit under Kentucky law, the Sixth Circuit rejected a similar inference:

> Rather than use physical evidence to corroborate his personal observations, [the plaintiff] instead infers from physical evidence (a spot on his pants) something he did not observe (liquid on the floor). What [the plaintiff] needs to defeat summary judgment is an observation (or reasonable inference) that there is liquid on the floor, and that is where his case falls short.

*Padgett v. Wal-Mart Stores E., L.P.*, 731 F. App'x 397, 400 (6th Cir. 2018). Here, as in *Padgett*, Melinda's husband, Scott, did not observe anything on the floor of the Skyline restaurant

where she fell—a wet substance or otherwise. Scott Dep., Doc. 23, 34:10–11. Scott did, however, testify that it was raining outside on the day of Melinda's fall, and that before arriving at Skyline, the family had attended Melinda's mother's funeral. Because it was misting out when they were coming from the funeral service, Scott and Melinda went home before proceeding on to Skyline so that the couple's son, Jacob, could change his clothes. *Id.* at 26:16–21. Even though "[t]he court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party," none of the eyewitnesses at the restaurant on the day Melinda fell, including Melinda, herself, observed water on the floor or any other substance as the culprit for *why* she fell. *Cox*, 53 F.3d at 150. Given these circumstances, the fact that Melinda's back was wet is wholly unpersuasive.

Because neither Melinda, nor any of the witnesses that were present at Skyline at the time of the incident were able to identify what caused Melinda to fall, the Court finds the analogous facts in *Spitzer v. Frisch's Rests., Inc.*, 2021-Ohio-1913, ¶¶ 7–8 (12th Dist.) compelling. The plaintiff in *Spitzer* was unable to identify specifically what caused her fall, but assumed that it could be one of two things: water on the bottom of her shoes or a foreign substance on the floor. The court rejected both contentions. "[B]ecause Spitzer cannot specifically identify what caused her to fall — other than assuming that the soles of her shoes were wet due to her having just walked over wet pavement to get inside the restaurant prior to her fall — a finding of negligence on the part of Frisch's simply cannot be had." *Id.* ¶ 7. Further, the court rejected her assertion that "there must have been 'some form of a slippery condition' caused by a foreign 'substance,' possibly grease, on the restaurant's floor," because she slipped and fell in a Frisch's restaurant. *Id.* ¶ 8. As the court in *Spitzer* explained, no "inference of negligence arises from the mere happening of an accident." *Id.* (quoting *Titenok*

11

*v. Wal-Mart Stores East, Inc.*, 2013-Ohio-2745, ¶ 8 (10th Dist.); *c.f. Eller v. Wendy's Int'l, Inc.*, 142 Ohio App. 3d 321, 334 (10th Dist. 2000) ("The mere fact that a customer slips and falls on the floor of a business establishment does not, standing alone, create an inference that the floor was unsafe.") (citation omitted).

The *Spitzer* case is not alone. Many other courts have reached the same result in cases like this one where the plaintiff could not identify what caused her to fall. *See*, *e.g.*, *Smith v. Resch's Bakery*, 1987 Ohio App. LEXIS 10048, at *5–6 (10th Dist. Dec. 10, 1987) (explaining that because the plaintiff "really had no idea why she fell" and could not "identify the cause of her fall," the plaintiff "cannot show that [the defendant] breached a duty of care owed to her"); *Williams v. Family Dollar Stores of Ohio, Inc.*, No. 3:22-cv-6, 2023 U.S. Dist. LEXIS 153995, at *7 (S.D. Ohio Aug. 30, 2023) ("Williams alleges only that she fell because of something 'gritty' and 'slippery.' Her claim relies on speculation that because she fell, there was a hazardous condition, and Family Dollar was somehow responsible."); *Cleveland Athletic Ass'n*, 129 Ohio St. at 154–155 (finding that where the plaintiff did not know what caused her to slip and fall, "reasonable minds can come to no other conclusion than there was no negligent act or omission on the part of the defendants"); *Guyton v. Debartolo, Inc.*, 1993 Ohio App. LEXIS 5261, at *2 (8th Dist. Nov. 4, 1993) (finding speculation or conjecture on a plaintiff's part to be insufficient at summary judgment where the plaintiff "clearly stated she did not know what caused her to fall but merely 'assumed' she slipped on water accumulated on the floor") (per curiam).

Consider then, the expert witnesses Plaintiffs want so badly to present. Though Skyline seeks to exclude the opinions of Dr. Rider under Rule 702 and *Daubert*, the Court need not engage in that inquiry because even if his opinions were not excluded, neither his, nor Alan

12

Someck's opinions, can rescue Plaintiffs' negligence claim. In his findings, Dr. Rider asserted, in relevant part: "The presence of water or other contaminant on which Ms. Wheat slipped violated reasonable expectations of a safe and slip-resistant walking surface." Rider Aff., Ex. 1, Doc. 34-2, PageID 806. Arriving at this conclusion, Dr. Rider considered the testimony of Melinda, Scott, Jacob, Molly Marx, Shirley LaVilla, and Katherine Withers. *Id.* at PageID 805. Dr. Rider's findings in this regard are speculative. He presumes that Melinda had to have slipped on water or some other contaminant, notwithstanding the fact that none of the witnesses could identify the cause of the fall. Someck's findings suffer from a similar defect. Though he does not expressly identify the cause of Melinda's fall, he appears to reach a similar conclusion as Dr. Rider: that Melinda must have slipped on water because it had been raining outside. Someck Aff., Ex. 1, Doc 34-3, PageID 825 ("It had been raining during the morning and a wet floor sign and 2 mats were placed by the entrance way. No dry mopping had been done along the main pathway leading to the dining room. As they began walking into the dining room, Ms. Wheat suddenly slipped and fell and subsequently sustained significant injuries from the fall.").

The opinions of Dr. Rider and Someck are easily distinguishable from an expert's opinions in another slip-and-fall case, *Sadey v. Metromedia Steakhouses Co.*, 1999 Ohio App. LEXIS 3315, *11–12 (8th Dist. July 15, 1999). In that case, the court contemplated whether the plaintiff had sufficiently demonstrated the cause for her fall. Answering that question in the affirmative, the court considered the testimony of an expert, who testified that the concrete foundation at issue was a trip hazard and that the ramp was seriously hazardous and defective at the time the plaintiff fell. *Id.* at *12. Unlike all of the witnesses in this case, who could not identify the cause of Melinda's fall, the plaintiff and her daughter in *Sadey* both testified that

the plaintiff tripped on a raised area of concrete, which aligned with the expert's opinion that the concrete foundation was a trip hazard. *Id.* at \*11–12. Thus, the expert's opinions in *Sadey*, unlike those at issue here, did not arise from hypothesis or mere conjecture. As a result, the speculative nature of Dr. Rider's and Someck's opinions do little to advance Plaintiffs' cause.

When viewing the evidence in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to demonstrate a genuine dispute of material fact. Namely, Plaintiffs have failed to introduce evidence that would permit a reasonable jury to find that Melinda fell as a result of Skyline's negligence. Instead, Plaintiffs have merely asserted that, based on the evidence, it "makes sense that tracked-in water or contaminants are *most likely* what caused Melinda to slip and fall." Doc. 34, PageID 695 (emphasis added). *See Meyer v. Dayton*, 2016-Ohio 8080, ¶ 24 (2d Dist.) ("An inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn." (quoting *Gibbs v. Speedway, LLC*, 2014-Ohio 3055, ¶ 19 (2d Dist.)); *Hill v. Monday Villas Property Owners Ass'n.*, 2012-Ohio-836, ¶ 18 (2d Dist.) ("When the cause of a fall cannot be identified, a finding of negligence is precluded.") (quotation omitted). Because "it is incumbent upon the plaintiff to identify or explain the reason for the fall" in a slip-and-fall action, *Stamper*, 65 Ohio App. 3d at 67–68 (citation omitted), Skyline is entitled to summary judgment on Plaintiffs' negligence claim. As a result, Plaintiffs' loss of consortium claim also fails as a matter of law. *See Bowen v. Kil-Kare, Inc.*, 63 Ohio St. 3d 84, 93 (1992) ("[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury.").

## IV.    CONCLUSION

For the reasons stated, the Court **GRANTS** Plaintiffs' motion to strike (Doc. 37), **GRANTS** Defendant's motion for summary judgment (Doc. 33), **DENIES** as moot Defendant's motion to strike the opinions of Dr. Rider (Doc. 33), and **DISMISSES** Plaintiffs' complaint (Doc. 1) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

   **IT IS SO ORDERED.**

May 19, 2026

Jeffery P. Hopkins
United States District Judge